# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 18-cr-448 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CHRISTOPHER SANDERS | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons set forth below, Defendant Christopher Sanders' motion to suppress [35] is denied. This case remains set for further status hearing on January 21, 2020, at 9:00 a.m.

**I.     Background**

On the morning of August 18, 2017, Chicago police officers Dean Ewing and Thomas Creamer arrested defendant for the state charges of UUW by a felon and aggravated unlawful use of a weapon. Tr. 5, 32.[1] After Defendant's arrest, officers transported him to the tactical office in the Fifth District police station. *Id.* 6, 32. The tactical office, which is located directly next to the rear exit of the police station, is approximately 12 feet long by 12 feet wide and has a metal bench and bar that are both affixed to the wall. *Id.* 6, 33. Once inside the tactical office, Officers Ewing and Creamer inventoried Defendant's personal property and removed any shoelaces and belts. *Id.* 7, 33. The officers handcuffed Defendant to the room's metal bar for officer safety and to prevent him from escaping out through an unlocked door at the rear exit of the station. *Id.* 7-8, 33-34.

During processing, Officer Ewing ran Defendant's criminal history and discovered that he was a convicted felon. *Id.* 12. Specifically, Defendant has a 2009 conviction for armed robbery and a 2014 conviction for being a felon in possession of a firearm. See Gov't Exs. 2 & 3.

---

[1] Citations to "Tr." are taken from the transcript of an evidentiary hearing held on July 25, 2019, at which the Government presented the testimony of the two arresting officers, who were subject to cross-examination by defense counsel. Defendant did not testify, nor did he call any witnesses.

According to the testimony of both officers, at approximately 10:25 a.m., after Defendant was processed, Officer Ewing personally read defendant each line of his *Miranda* rights verbatim from the back of his FOP book. *Id.* 8-9, 34-35; see also Govt. Ex. 1 (a photocopy of the page that he read from his FOP book). The officers further testified that, when asked, "Do you understand each of these rights?" Defendant answered yes. Tr. 9, 35. And when asked, "Do you wish to answer questions at this time?" Defendant again answered yes. *Id.* 10, 35. According to the officers, Defendant then proceeded to tell the officers that he had had the firearm for a while but had never shot it, and didn't know if it had been used in any shootings. *Id.* 10, 36.

The officers testified that they did not engage in any verbal or physical threats to induce Defendant to make a statement. *Id.* 11, 36. In fact, according to the officers, Defendant appeared "relaxed, calm, at ease" and "compliant and cooperative," and did not appear to be excessively nervous, combative, or confused. *Id.* 11-12, 36-37. The officers further stated that at no time did Defendant tell them that he wanted a lawyer present or that he did not want to talk to them. *Id.* 12, 37. In fact, because defendant was being calm and cooperative, the officers allowed him to make a telephone call from the tactical office, which was not their typical practice. *Id.* 12-13, 37-38.

**II.   Legal Standard**

A criminal defendant's post-arrest statement is admissible if the defendant was read his *Miranda* rights and then knowingly, voluntarily, and intelligently waived those rights. Under the controlling legal standard, the Government must show that Defendant's *Miranda* waive was "voluntary in the sense that it was the product of a free and deliberate choice." *Berghuis v. Thompson*, 560 U.S. 370, 382 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)); see also *United States v. Brown*, 664 F.3d 1115, 1118 (7th Cir. 2011). Whether a person has validly waived his *Miranda* rights depends on the totality of the circumstances, including "the

defendant's background and conduct, the duration and conditions of the interview and detention, the physical and mental condition of the defendant, the attitude of the law enforcement officials, and whether law enforcement officers used coercive techniques." *United States v. Quiroz*, 874 F.3d 562, 567 (7th Cir. 2017) (internal quotation marks omitted); see also *Johnson v. Pollard*, 559 F.3d 746, 753 (7th Cir. 2009); *Gilbert v. Merchant*, 488 F.3d 780, 791 (7th Cir. 2007). In considering the defendant's background, a court may take into consideration his "experience with the criminal justice system." *Brown*, 664 F.3d at 1118. And the court of appeals has stressed that it is "immaterial that [the] defendant did not sign a waiver form." *Id.*

### III. Discussion

Both the standard and its application in this case are straightforward. At the evidentiary hearing, both officers credibly testified that Officer Ewing read Defendant his *Miranda* rights verbatim from the back page of Ewing's FOP book. The Court cannot see any reason to doubt that testimony. *Miranda* has been the law since 1966, and its incantation is familiar to everyday Americans. Moreover, the officers learned almost immediately that Defendant had prior felony convictions, from which it was reasonable to surmise that they would have nothing to gain from dispensing with *Miranda* warnings, since Defendant likely was familiar with his rights any way. True, the officers could have provided a written waiver form at the same time, and had they done so and obtained Defendant's signature, the instant motion likely would not have been filed. But the officers' testimony that Defendant gave an affirmative answer to the question of whether he understood his rights was credible, and the Seventh Circuit has repeatedly reaffirmed that a written waiver is not obligatory. See*, e.g.*, *Brown*, 664 F.3d at 1118; *United States v. Montgomery*, 390 F.3d 1013, 1017 (7th Cir. 2004) (refusing to extend *Miranda* to require officers to record all interrogations); *United States v. Jackson*, 300 F.3d 740, 748 (7th Cir. 2002) ("The absence of a

signed waiver is not conclusive evidence on the issue of whether a defendant waived his rights."). On the basis of the foregoing, the Government has established that Defendant's waiver of his *Miranda* rights was knowing.

It also was voluntary. Both officers testified without contradiction that Defendant was taken to a large, unlocked room and was treated cordially without threats, intimidation, or physical contact. Although Defendant was handcuffed for officer safety and to prevent escape, the officers found Defendant to be "relaxed, calm, at ease" and "compliant and cooperative." Indeed, based on his demeanor, the officers permitted Defendant to make a telephone call from the tactical office. There was no evidence to the contrary presented at the hearing on any of these points, or any other suggestion that Defendant was subject to threats, sleep or food deprivation, or anything else indicating coercion. See*, e.g.*, *Berghuis*, 560 U.S. at 387 (finding waiver when defendant was questioned "in a standard-sized room in the middle of the afternoon" and there were no facts indicating coercion like "an incapacitated and sedated suspect, sleep and food deprivation, and threats"); *United States v. Snodgrass*, 635 F.3d 324, 328 (7th Cir. 2011) (finding waiver because "his decision was not a result of mental or physical harm"); *Brown*, 664 F.3d at 1118 (finding waiver due to defendant's familiarity with the criminal justice system from his prior convictions).

In opposition to the credible and consistent live testimony of the officers at the hearing, Defendant submits only his own five-sentence affidavit in which he denies being informed of his *Miranda* rights and subsequently confessing to possession of a gun. Defendant, of course, is not obliged to testify or to call any witnesses, either at an evidentiary hearing or at trial. But the Court is not obliged, even in a criminal case, to take his side in a credibility contest, particularly when the other witnesses did provide an opportunity for the Court to gauge their testimony in the crucible of cross-examination. Indeed, this was exactly the scenario presented in *United States v. Edmond*,

4

560 Fed. Appx. 580, 582-83 (7th Cir. Mar. 19, 2014): "Edmond had submitted an affidavit before the evidentiary hearing, but then at the hearing he declined to testify and instead left uncontradicted that, after *Miranda* warnings, he waived his rights to remain silent and to have a lawyer present during the interview. The district court credited the officer's testimony, and an appellate challenge to that decision would be frivolous." Other cases similarly reflect the principle that a fact-finder may credit the testimony of live witnesses over the testimony of paper affiants. See, *e.g.*, *United States v. Mujahid*, 2013 WL 4011000 (N.D. Ill. Aug. 6, 2013) (giving declarations of non-testifying witnesses "substantially less weight" than live witnesses); *United States v. Marzook*, 435 F. Supp. 2d 708, 752 (N.D. Ill. 2006) (same).

Defendant also points to a couple of additional missing details in the written record. First, Defendant argues that the Court should doubt the officers' version of events because Officer Ewing used the passive voice – stating that Defendant was "Mirandized" by the "R/O's" (reporting officers), rather than stating that a particular officer read Defendant his *Miranda* rights – in his case incident report. Second, Defendant submits that the Court should infer from the omission in Officer Altenbach's arrest report of any reference to the reading of *Miranda* rights that it never happened. These arguments cannot bear the weight Defendant places on them. Where a court credits the testimony of the officers as to the compliance with *Miranda*, "[i]t makes no difference that the police officer did not explicitly state in his report that [Defendant] had waived his Fifth Amendment rights." *Edmond*, 560 Fed. Appx. at 583 (citing *United States v. Freeman*, 691 F.3d 893, 900-01 (7th Cir. 2012).

Dated: January 16, 2020

_____
Robert M. Dow, Jr.
United States District Judge

5